UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
┌─────────────────────────────────┐
│ NIGHOUS WELLS III,              │
│                                 │
│              Plaintiff,         │
│                                 │
│         v.                      │                Civil Action 03-00228  (HHK)
│                                 │
│ REUBEN JEFFERY III, Chairman,   │
│ Commodity Futures Trading       │
│ Commission,                     │
│                                 │
│              Defendant.         │
└─────────────────────────────────┘
```

MEMORANDUM OPINION

In this action brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. § 701 *et seq.*, plaintiff Nighous Wells III claims that defendant Reuben Jeffery III, in his official capacity as Chairman of the Commodity Futures Trading Commission ("CFTC"),[1] unlawfully discriminated against him on the basis of his sex and disability. Before the court are the parties' cross motions for summary judgment [#37 and #38]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that Wells's motion must be denied and CFTC's motion must granted.

I. BACKGROUND INFORMATION

Wells began his employment with CFTC's Division of Enforcement as a GS-3 Clerk Typist in March 1987. During his employment, he also held the positions of Legal Clerk, Legal

---

[1] Plaintiff's complaint originally named then-Chairman of the CFTC James E. Newsome as the defendant in this suit. Reuben Jeffery III is the current Chairman of the CFTC. Thus, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, the court substitutes Reuben Jeffery III for James E. Newsome as the proper defendant.

Technician, and Secretary. Since being hired as a GS-6 Secretary in 1990, Wells received two career ladder promotions, first to GS-7 in 1991, then to GS-8 in 1992.

In 1991, Wells was diagnosed with both bipolar disorder and unipolar disorder and hospitalized for treatment. Medication for his illness allows him to perform his job.

In July 2001, Russell Pantleo resigned from a GS-9 Administrative Assistant position within the Department of Enforcement. Upon his departure, Yolanda Smith, a female with no known disability who was previously employed as a GS-7 Secretary in the Division of Enforcement, received a temporary promotion to the vacant post, effective July 26, 2001. Thereafter, on November 30, 2001, CFTC posted Vacancy Announcement 02-010 to fill the Administrative Assistant position temporarily held by Smith.[2] The duties of the position included, *inter alia*, assisting in the preparation of administrative and program documents; assisting in the maintenance of computer-based management information systems; functioning as an office manager; receiving visitors and telephone calls, and screening both; making arrangements for meetings, examinations, and depositions; composing original letters; coordinating travel arrangements; and monitoring the overall administrative and clerical support needs of the office. The announcement described the position as "Temporary, not to exceed one year" and stated that the position "may be terminated at any time before the expiration date or may be made permanent without further competition." Def.'s Mot. for Summ. J. ("Def.'s Mot."),

---

[2] On or about that same date, Acting Director Phyllis Cela requested that Smith continue her temporary Administrative Assistant position until Announcement 02-010 was filled. Smith's temporary promotion, which started July 29, 2001, would otherwise have expired around November 26, 2001.

Exh. A-6.  The position functioned as a secretary for both Dan Nathan, Deputy Director, and Phyllis Cela, Acting Director.

Wells, Smith and three other female CFTC employees applied for the position listed in Vacancy Announcement 02-010, all of whom the CFTC Office of Human Resources found to be eligible.  Nathan interviewed all five candidates, with Cela sitting in as an observer during Smith's interview.  Nathan and Cela discussed the candidates and Smith was selected to fill the position, effective January 13, 2002.

In March 2002, CFTC hired Patrick McCarty as its new General Counsel.  When he arrived at CFTC, Wendy Cobb was detailed from the Division of Enforcement to the Office of the General Counsel to serve as McCarty's temporary Administrative Assistant.  On August 13, 2002, CFTC posted Vacancy Announcement 02-080 to fill the GS-9 Administrative Assistant position.  Although this position reported to a different supervisor and was in a different division at CFTC, it shared the same duties as the position described in Announcement 02-010.  Wells and Cobb applied for this position, as did four other females.  On September 12, 2002, McCarty selected Cobb for the position without conducting any interviews.

Wells filed this action on February 12, 2003.  On March 29, 2004, the court dismissed the claims in Wells's original complaint alleging race and age discrimination, as well as all claims relating to events prior to November 2001.  The court denied, without prejudice, CFTC's motion for summary judgment as to the surviving claims to allow Wells to take discovery.  Thereafter, the court granted Wells leave to amend his complaint to assert claims of sex and disability discrimination with respect to his non-selection for the position advertised in Vacancy

Announcement 02-080.[3] The parties have now completed discovery and have each filed motions for summary judgment.

## II. ANALYSIS

Wells moves for summary judgment in his favor, arguing that the undisputed material facts entitle him to judgment as a matter of law.[4] CFTC likewise moves for summary judgment in its favor, contending (1) that Wells failed to establish a *prima facie* case of disability discrimination; and (2) that Wells cannot establish that CFTC's legitimate nondiscriminatory reasons for failing to promote Wells to either of the positions listed in Vacancy Announcements 02-010 and 02-080 were pretexts for gender or disability discrimination.

---

[3] The court also granted leave to Wells to amend his complaint to assert a claim of retaliation in violation of both Title VII and the Rehabilitation Act, which Wells did. However, in his motion for summary judgment, Wells indicated that "[a]fter discovery and further research . . . his retaliation claim is not actionable." Pl.'s Mot. for Summ. J. at 1. As Wells has abandoned his retaliation claim, CFTC is entitled to summary judgment on this claim.

[4] Under FED. R. CIV. P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50 (citations omitted).

A.     *McDonnell Douglas* **Standard**

Wells asserts claims of discrimination on the basis of disability and sex in violation of the Rehabilitation Act and Title VII, respectively. At the summary judgment stage of Rehabilitation Act and Title VII litigation, claims of disparate treatment are governed by the procedural framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See McGill v. Munoz*, 203 F.3d 843, 845 & n.2 (D.C. Cir. 2000); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). Under this framework, a plaintiff must first make out a *prima facie* case of age- or disability-based discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff meets this burden, a presumption is created that the employer discriminated unlawfully. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the defendant to provide a legitimate nondiscriminatory reason for the adverse employment action. The burden on the defendant is merely one of production, not persuasion. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288–89 (D.C. Cir. 1998) (en banc). Once the defendant meets this burden, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's asserted legitimate reason is false, a lie, or that the employer's real motivation was discriminatory, such that a fact finder could infer discrimination. *Id.* at 1289–90. The plaintiff at all times retains the ultimate burden of persuasion. *Burdine*, 450 U.S. at 253.

B.     **Disability Discrimination**

The Rehabilitation Act prohibits federal agencies from discriminating against any "otherwise qualified individual with a disability" solely because of his disability. 29 U.S.C. §

794(a).[5]  To establish a *prima facie* case of discrimination under the Rehabilitation Act, a plaintiff must show that he: "(1) is an individual with a disability (2) who, with or without reasonable accommodation, can perform the essential functions of the position, and (3) who suffered an adverse employment decision." *Baker v. Potter*, 294 F. Supp. 2d 33, 42 (D.D.C. 2003) (citing *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002)).  CFTC concedes that the last two elements are satisfied, but argues that Wells has failed to make out the first element of the *prima facie* case, *i.e.*, that he was an individual with a disability.

The Rehabilitation Act defines an "individual with a disability" as "any person who—(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B).  In this case, Wells relies solely on the third category, arguing that CFTC regarded Wells as having an impairment that substantially limits one or more of his major life activities.  In order to establish that CFTC "regarded" Wells as disabled, Wells must show two things: (1) that he was perceived as having a physical or mental impairment; and (2) that the impairment was perceived to substantially limit one or more of his major life activities.  *Mack v. Strauss*, 134 F. Supp. 2d 103, 109 (D.D.C. 2001).[6]

---

[5] The standards applied when analyzing claims brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, are also employed when evaluating claims of employment discrimination under the Rehabilitation Act.  *See* 29 U.S.C. § 794(d); 29 C.F.R. § 1614.203(b) (stating that the EEOC regulations promulgated pursuant to the ADA, as set forth at 29 C.F.R. pt. 1630, also apply to the Rehabilitation Act); *see also Fallacaro v. Richardson*, 965 F. Supp. 87, 91 & n.4 (D.D.C. 1997) (reviewing ADA regulations to guide decisions for claims under the Rehabilitation Act).

[6] *Cf. Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999) ("There are two apparent ways in which individuals may [be regarded as having a disability]: (1) a covered entity

While it is undisputed that Wells has an impairment—the regulations make clear that a mental illness qualifies as an impairment, 29 C.F.R. § 1630.2(h)(2)—the parties dispute whether CFTC knew of Wells's impairment and, if so, whether CFTC viewed it to substantially limit a major life activity.  CFTC first argues that there is no credible evidence that any of the three relevant CFTC officials involved in the two adverse employment actions—Nathan, McCarty, and Cela—were aware that Wells had an impairment.  All three testified that they had no knowledge of Wells's unipolar or bipolar disorder, Def.'s Mot., Exhs. C, D & F.  In fact, Wells acknowledged in his deposition that he has no recollection of ever informing any of the three selecting officials about his condition.  *Id.,* Exh. A, at 134:13–24.

Lacking direct evidence to support his case, Wells argues that circumstantial evidence shows that those responsible for the adverse employment actions perceived him to have an impairment.  Wells points to (1) the statement by Muriel Slaughter, the liaison between human resources and the Division of Enforcement, that everyone "upstairs knew about Nick and his illness," Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Opp'n"), Exh. 6, at 6; (2) admissions by Nathan that he was aware that Wells had some performance problems, Def.'s Mot., Exh. B, at 39:9–17;  (3) comments by Slaughter that "Cela has a lot of compassion for [Wells]" and that CFTC failed to reprimand Wells because "he says he has this medical problem," Def.'s Opp'n, Exh. 6, at 2; and (4) the fact that Wells was allowed to use flextime to attend doctor

---

mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities."); *see also* 29 C.F.R. § 1630.2(*l*)(1) (describing one method of being "regarded as having such an impairment" as being "treated by a covered entity as having a substantially limiting impairment.").

appointments. This evidence and the reasonable inferences which may be drawn from it, even when considered in a light most favorable to Wells, is insufficient. To support his contention that Nathan, McCarty, or Cela were aware that he had an impairment, Wells was obliged to present competent evidence[7] probative on the issue that "set[s] forth such *facts as would be admissible in evidence* and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e) (emphasis added). Wells does not present such evidence. For example, the statement by Muriel Slaughter that everyone "upstairs knew about Nick and his illness" is not evidence, but rather is speculation and hearsay. So too are her statements that "Cela has a lot of compassion for [Wells]" and that CFTC failed to reprimand Wells because "he says he has this medical problem." At best, the evidence that Wells presents on the issue is merely colorable and not significantly probative.

Assuming *arguendo*, however, that Wells adduced evidence sufficient to present a triable issue regarding whether Nathan, McCarty, or Cela were aware that he had an impairment, CFTC still would be entitled to summary judgment. The Supreme Court has noted that "[m]erely having an impairment does not make one disabled." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 195 (2002). Congress did not intend that "everyone with [an] impairment that precluded the

---

[7] Federal Rule of Civil Procedure 56(e) requires that an affidavit or declaration submitted in support of, or in opposition to, a motion for summary judgment be made by an affiant or declarant who has personal knowledge of the matters about which he is testifying and that the affiant or declarant be competent to testify to such matters. FED. R. CIV. P. 56(e); *China v. Compass Commc'ns Corp.*, 473 F. Supp. 1306, 1308 (D.D.C. 1979). The affidavit or declaration cannot contain hearsay evidence, as such evidence would not be admissible at trial. Hearsay evidence that would not be admissible at trial "counts for nothing" when used to support or oppose a motion for summary judgment. *Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000).

performance of some isolated, unimportant, or particularly difficult manual task" would qualify as disabled. *Id.* at 197. Instead, Congress created a statutory framework that requires a plaintiff to show, in order to meet his burden of establishing that he is regarded as disabled, that his employer perceived that the life activity limited by his impairment was "major" and that the impairment "substantially" limited that major life activity. *Id.* Moreover, the Supreme Court has counseled that "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Id.*

A "major life activity" under the Rehabilitation Act is an activity of "central importance to daily life." *Id.* Wells claims that his mental illness limits the major life activity of "working." Both the Supreme Court and the D.C. Circuit have avoided determining whether "working" constitutes a major life activity, opting instead to assume, without deciding, that it does. *See id.* at 200 ("Because of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much, and we need not decide this difficult question today."); *Sutton v. United Air Lines*, 527 U.S. 471, 492–93 (1999) (resolving the case by "[a]ssuming without deciding that working is a major life activity."); *Duncan v. WMATA*, 240 F.3d 1110, 1117–18 (D.C. Cir. 2001) (assuming *arguendo* that working is a major life activity).[8] This court will likewise assume, without deciding, that working can be a major life activity under the Rehabilitation Act.

---

[8] Many of the courts of appeals have adopted a similar view and have refused to expressly decide whether working qualifies as a major life activity. *See, e.g.*, *Taylor v. Fed. Express Corp.*, 429 F.3d 461, 463 (4th Cir. 2005); *Guzman-Rosario v. United Parcel Serv.*, 397 F.3d 6, 11 (1st Cir. 2005); *Knutson v. Ag Processing, Inc.*, 394 F.3d 1047, 1050 (8th Cir. 2005); *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 795 n.1 (9th Cir. 2001); *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1060 n.2 (7th Cir. 2000).

The next and final step then is to determine whether Wells has met his burden of establishing that CFTC perceived his impairment to "substantially limit" his major life activity of working. If he has not, then Wells has not established that he was regarded as "disabled" and summary judgment in favor of CFTC would therefore be appropriate. The Supreme Court has held that, with respect to the major life activity of working, the phrase "substantially limits" means that a plaintiff must show, "at a minimum," that he is perceived as:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

*Sutton*, 527 U.S. at 491 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Thus, to establish that he was regarded as disabled, Wells must demonstrate that CFTC perceived his impairment to preclude him "from more than one type of job, a specialized job, or a particular job of choice." *Id.* at 492.

Applying this framework, the court concludes that Wells has failed to demonstrate that he is substantially limited—or is regarded as substantially limited—in his ability to work. The simple fact that Wells continued to be employed at CFTC in a secretarial position for over a decade since CFTC became aware of his impairment belies any claim that he was regarded as being substantially limited in his ability to work. This is particularly so since the duties performed in the Administrative Assistant positions sought by Wells were, according to Wells himself, the "same types of duties" currently performed by him in his secretary position. Def.'s

Mot., Exh. A, at 70:10–22.[9]  During his time at CFTC, Wells consistently met or exceeded expectations in the clerical positions he held, indicating that CFTC did not regard his as unable to perform these positions.

As the Supreme Court wrote in *Sutton*, "[i]f jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs." 527 U.S. at 492.  Here, because there is no evidence that CFTC felt that Wells's mental disorders disqualified him from employment as a secretary or administrative assistant at CFTC, much less "significantly probative evidence on the subject," *Duncan*, 240 F.3d at 1117, no reasonable jury could conclude that CFTC regarded Wells as being precluded from a *substantial* or *broad* class of jobs.  For this reason also, CFTC is entitled to summary judgment on Wells's disability discrimination claim.

**C.     Sex Discrimination**

Title VII makes it unlawful for a federal employer to discriminate against an individual on the basis of sex.  42 U.S.C. § 2000e-16(a) ("All personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any

---

[9] Wells suggests that the similarities between the positions are "irrelevant," arguing that CFTC allowed Wells to keep his secretarial position but refused to afford him any additional opportunities based on a perception that he could not handle such increased duties. Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 14–15.  Notwithstanding the lack of evidence to support this assertion, this argument demonstrates Wells's misunderstanding of the burden placed upon him by the Rehabilitation Act.  Given the "statutory insistence that a 'major life activity' be 'substantially impaired,'" it is not enough for Wells to establish that his impairment "may have led to a discrete adverse employment consequence." *Fallacaro*, 965 F. Supp. at 91.  He must instead show that his impairment was perceived to alter his ability to work in a broad class of jobs.  Because of the similarities between the position sought and the position held, Wells has failed to establish such a perception on the part of CFTC.

discrimination based on . . . sex . . . ."). Wells contends that his non-selection for the two positions listed in Vacancy Announcements 02-010 and 02-080 was motivated by sex in violation of Title VII.

*1. Prima Facie Case*

A *prima facie* case of sex discrimination under Tile VII is established when a plaintiff shows: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that he was treated differently than similarly situated employees who are not part of the protected class, giving rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Stella*, 284 F.3d at 145; *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999). CFTC concedes, at least for purposes of its motion for summary judgment, that Wells has established a *prima facie* case of sex discrimination in connection with Wells's non-selections. Def.'s Mot. at 16. As a result, the court now moves to the next step in the *McDonnell Douglas* framework.

*2. Defendant's Legitimate Nondiscriminatory Reasons*

A defendant's burden of articulating a legitimate, nondiscriminatory reason is one of production only, as "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Here, CFTC argues that Smith and Cobb received the promotions instead of Wells because CFTC "considered these candidates to be the best qualified for the positions." Def.'s Mot. at 17.

The selecting official, Dan Nathan, testified that he selected Smith for the position announced in Vacancy Announcement 02-010 because "she seemed to be the candidate with the best experience and ability to do the work." *Id.*, Exh. D, at 2.  Before being selected, Smith had been detailed to the vacant Administrative Assistant position for almost six months.  During this time, Nathan felt that she "performed extremely well." *Id.*  Nathan further testified that, although he was aware that Wells had received "some good performance evaluations," he was also aware that, at times, Wells "was unavailable at work and could not be located" and that Wells had "difficulties . . . in arranging travel for staff." *Id.,* Exh. B, at 39:6–39:19.  Moreover, Cela, who assisted Nathan in the selection, testified that in her estimation Smith held more of the qualities necessary for the position than did Wells, such as having "good interpersonal skills and a good reputation in the Division by working with many people" and the ability "to juggle a lot of assignments." *Id.*, Exh. C, at 3.

McCarty, who was the sole selecting official for the position listed in Vacancy Announcement 02-080, indicated that he selected Cobb "based on the detail performance that she provided to me.  I had become comfortable with her personality and work habits and felt that it was a very good fit." *Id.*, Exh. F, at 6.

As the above explanations are legitimate and do not rely on any improper or unlawful motive, CFTC has met its burden of producing a legitimate nondiscriminatory reason for not selecting Wells for the vacant positions.  Therefore, the burden shifts back to Wells to show that CFTC's reasons are pretexts for discrimination.

*3. Pretext*

Once the defendant meets its burden of producing a legitimate, nondiscriminatory reason, the initial presumption of discrimination "drops from the case," *Hicks*, 509 U.S. at 507–08 (quoting *Burdine*, 450 U.S. at 255 n.10), and the burden shifts back to Wells, "who then has an opportunity to discredit the employer's explanation." *Aka*, 156 F.3d at 1288. Wells may do so by presenting evidence from which the finder of fact could infer discrimination, including: "(1) [any evidence used to establish] the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff." *Id.* at 1289. CFTC argues that Wells has failed to meet this burden of discrediting its explanation and, therefore, CFTC is entitled to judgment as a matter of law. The court agrees. When viewed in a light most favorable to Wells, the summary judgment record is insufficient to make the issue of pretext a matter for consideration by the jury.

Wells's sole argument to establish pretext is that his qualifications were superior to those of the two successful applicants. Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 17–28. It is true that "qualifications evidence may suffice, at least in some circumstances, to show pretext." *Ash v. Tyson Foods, Inc.*, 546 U.S. __, 2006 U.S. LEXIS 1816, at *5 (Feb. 21, 2006); *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 187–88 (1989) (noting that a plaintiff "might seek to demonstrate that [the defendant's] claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position."). The D.C. Circuit recently clarified what qualifications evidence is sufficient to show pretext, stating that "[i]n order to justify an inference of discrimination, the qualification gap

14

must be great enough to be inherently indicative of discrimination." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006); *see also Aka*, 156 F.3d at 1294 (concluding that the factfinder may infer pretext if "a reasonable employer would have found the plaintiff to be significantly better qualified for the job."). However, if the qualifications of the applicants are similar, an inference of discrimination does not arise from the employer's decision not to hire the plaintiff. *Aka*, 156 F.3d at 1294 ("In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call.").

Here, Wells has failed to establish that he was significantly better qualified than the successful applicants such that a reasonable jury could infer discrimination. First, Wells had less clerical experience then both Smith and Cobb. At the time she was selected for the position listed in Vacancy Announcement 02-010, Smith had over eighteen years of clerical experience, including more than two years at CFTC. Def.'s Mot, Exh. A–15. At the time Cobb was hired, she had more than twenty-six years of clerical experience, six of which were with CFTC. *Id.*, Exh. A-29. Wells, however, had fifteen years of clerical experience at the time.[10]

---

[10] Although Wells acknowledged that he "had no more general clerical experience than Ms. Smith and Ms. Cobb," Pl.'s Opp'n at 18, he suggests that he was nonetheless more qualified than Smith and Cobb because his tenure *at CFTC* was longer than theirs. The court finds this argument unconvincing. Given that both Smith and Cobb had more overall secretarial experience than Wells, the fact that Wells was employed at CFTC for longer than either of them does not establish that Wells was "significantly better qualified" than them such that an inference of discrimination exists.
   Wells also suggests that he was more qualified than Smith and Cobb because he trained and assisted them with their duties at times. CFTC disputes this assertion. Even assuming it to be true, it fails to establish that Wells was "significantly better qualified."

Second, Wells's performance evaluations were no better than Smith's or Cobb's evaluations. In Smith's performance evaluation for 2000–2001, the most recent evaluation at the time she applied for the vacancy in Announcement 02-010, she received an overall rating of "meets or exceeds" with three "exceeds with distinction" ratings and two "meets or exceeds" ratings. Def.'s Mot, Exh. A-15. The narrative comments attached to this evaluation did not contain any negative comments, instead noting that she was a "significant asset" and was "extremely reliable, and did all her work efficiently, accurately, and on a timely basis." *Id.*[11] For that same year, however, Wells received no "exceeds with distinction" ratings and the narrative comments included negative statements that Wells performed at the "lower levels" of the "meets or exceeds" category, that there had been "instances of poor communications with vendors regarding routine matters," and that routine matters took "too long a period of time, despite requests for completion." *Id.*, Exh. A-3.

Cobb received an overall rating of "meets or exceeds," with one "exceeds with distinction" and five "meets or exceeds ratings" in her 2001–2002 performance evaluation, the most recent evaluation prior to the posting of Vacancy Announcement 02-080. *Id.*, Exh. A-29. Wells's evaluation for the same year gave him four "meets or exceeds ratings" and one "exceeds

---

[11] Smith's performance evaluation for the previous year included a suggestion that she needed to improve her understanding of the filing system. Wells argues that this one comment in a previous evaluation suggests that Smith was not qualified for the vacant position. However, the evaluation for the following year, 1999–2000, stated that her "filing is done timely and the few errors that arise in this area are corrected quickly." Def.'s Reply, Exh. 2. Moreover, the evaluation for the 2000–2001—the evaluation actually included in her application packet—made no reference to any difficulties with filing. One negative comment in an evaluation two years preceding the relevant time period is insufficient to establish that Wells was significantly more qualified than Smith such that an inference of discrimination arises from Wells's non-selection.

with distinction," *id.*, Exh. A-28.  These evaluations fail to establish that Wells was significantly better qualified than either of the two successful candidates such that an inference of discrimination is present.[12]

Third, the rating officials for the two vacancies found Wells to be less qualified than Smith and equally qualified as Cobb.  Keith Ross, a human resource specialist, rated and ranked all the candidates for Vacancy Announcement 02-010; he gave Smith a rating of 24 and Wells a rating of 22.  *Id.*, Exh. A-12.  Christopher Arntzen, another human resource specialist, rated and ranked the candidates for Vacancy Announcement 02-080.  Both Cobb and Wells received a rating of 15.  Wells never suggests that these ratings were not objectively reasonable or that they were the result of discriminatory animus.

Finally, Wells was never detailed to either of the vacant positions.  Both of the individuals ultimately selected did receive such details, and, during the course of those details, were able to impress the selecting officials.  Nathan, based on first-hand knowledge of Smith's work during the lengthy detail, testified that Smith "performed extremely well."  *Id.*, Exh. D, at 2.  At the time she was selected, Cobb had been working for McCarty for four months.  McCarty

---

[12] Wells notes that Cobb's performance evaluation included some negative comments from her former supervisor at the Department of Enforcement, including comments that, "for several weeks," she failed to present certain forms in a timely fashion and without errors.  Pl.'s Mot., Exh. 7.  It is true that Cobb's evaluation was not glowing, but that fact does not give rise to an inference of discrimination, particularly given the fact that Wells's performance evaluation from the prior year also had negative comments.  Furthermore, Wells did not have the same amount of clerical experience as Cobb, nor did he have experience working for the selecting official.  The court does not believe that a reasonable jury could, based on this evidence, conclude that the qualifications were so disparate so as to give rise to a legitimate inference of discrimination.

testified that he "was happy with the job that Wendy Cobb was performing." *Id.*, Exh. F. In fact, McCarty was so impressed that he nominated Cobb for a Service Award, writing that "Cobb has consistently proven to be an asset to OGC and the General Counsel," that she has "exemplified exceptional organizational skills," and that she takes "initiative," "communicates well," and "produce[s] high quality secretarial and administrative work." *Id.*, Exh. H.[13]

Based on all of the above, no reasonable jury could conclude that Wells was so significantly better qualified than either Cobb or Smith that an inference of sex discrimination exists as to Wells's failure to be selected for the vacant Administrative Assistant positions. Furthermore, Wells never introduces any other evidence that would suggest that CFTC's legitimate reasons for Wells's non-selections were pretexts for discrimination. For these reasons, CFTC is entitled to summary judgment on Wells's Title VII claim.[14]

---

[13] Wells makes a passing suggestion that Cobb and Smith were appointed to the details in the first place for discriminatory reasons. Therefore, according to Wells, CFTC "is simply using one discriminatory action to justify another discriminatory action." Pl.'s Opp'n at 17. Wells fails, however, to offer *any* evidence to support this claim. Such conclusory allegations are insufficient to establish pretext. *See Brown*, 199 F.3d at 458–59 (holding that speculation is insufficient to avoid summary judgment); *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (accepting "conclusory allegations as true . . . would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial.").

[14] Were the court to assume that Wells had met his burden of establishing a *prima facie* case of disability discrimination in violation of the Rehabilitation Act, these same reasons would likewise lead the court to conclude that Wells had failed to establish pretext with regard to that claim.

### III. CONCLUSION

For the foregoing reasons, the court concludes that Wells's motion for summary judgment [#38] must be denied and CFTC's motion for summary judgment [#37] must be granted.  An appropriate order accompanies this memorandum opinion.


                                                Henry H. Kennedy, Jr.
                                                United States District Judge


Dated: March 20, 2005